## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**JAMES MOORE**, individually
and on behalf of all others similarly
situated,

        *Plaintiff*,

v.

**EHEALTHINSURANCE
    SERVICES, INC.**,

        *Defendant.*

Case No. 3:21-cv-00707-MMH-PDB

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Defendant eHealthInsurance Services, Inc. ("eHealth"), respectfully moves to dismiss Plaintiff's First Amended Complaint ("FAC") [ECF No. 22] under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As detailed below, the Telephone Consumer Protection Act ("TCPA") is unconstitutional due to the number of overbroad content-based exemptions that it still contains, which do not survive strict scrutiny. Even if that was not the case, the FAC still should be dismissed for failure to plausibly plead that Plaintiff's cellular telephone number was used for residential purposes.

## INTRODUCTION

When the TCPA was implemented in 1991, Congress found that "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices." [TCPA] of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (codified at 47 U.S.C. § 227). But this balance was not achieved, resulting instead in an overly broad statute that regulated a wider variety of calls than was ever needed to protect consumer privacy. As a result, a number of content-based exemptions were included or added to try to trim it down to size. But, as argued below, these exemptions do not pass strict scrutiny and cannot be severed due to the sheer volume of exemptions that exist in a single statute. While the Supreme Court struck down one of the unconstitutional exemptions (the government-backed debt exemption) last year, the many overbroad content-based restrictions that remain in the TCPA render it unconstitutional. Because the TCPA is an unconstitutional law, eHealth cannot be held liable for conduct that allegedly occurred under it.

Even if the Court finds the TCPA to be constitutional (it is not), dismissal is still warranted, as Plaintiff fails to plausibly allege that his cellular phone number was used for residential purposes. As only calls to residential telephone subscribers are actionable under the do-not-call provisions of the TCPA, Plaintiff fails to state a DNC claim against eHealth. The FAC, therefore, should be dismissed.

## BACKGROUND AND ALLEGATIONS

Plaintiff filed the Complaint on July 19, 2021, alleging that a series of calls in June 2021 violated the TCPA's DNC provisions. Compl. [ECF No. 1] ¶ 26. Counsel for eHealth advised counsel for Plaintiff as to factual issues with the Complaint, and Plaintiff subsequently filed the First Amended Complaint on October 5, 2021 [ECF No. 22].

The FAC alleges that in June 2021, Plaintiff received a series of unsolicited calls from eHealth. FAC ¶ 22. Three calls are alleged from June 16, 2021, and three calls are alleged from June 17, 2021. *Id.* ¶ 23(i)-(vi). After the second call on June 17, 2021, Plaintiff alleges that he called back the number (512) 920-1312 and requested not to be contacted further, but alleges that he received one additional call from eHealth. *Id.* ¶ 23(v)-(vi). Plaintiff only alleges that he called back the (512) 920-1312, but claims that "*each* of [the] numbers when called back" are answered by a prerecorded message identifying the company as "GoMedigap" and stating that GoMedigap is "operated by eHealthInsurance Services, Inc." *Id.* ¶ 24.  Plaintiff also alleges that his cell phone number has been on the National Do Not Call Registry since May 2, 2007, and further alleges that he uses his cell phone number for personal use, although he does not allege that it was used for residential purposes. *Id.* ¶¶ 20-21.

On the basis of these claims, Plaintiff seeks to represent a "Do Not Call Registry Class" of:

> All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time, (2) within any 12-month period, (3) where the person's residential telephone

number had been listed on the National Do Not Call Registry for at least thirty days.

*Id.* ¶ 29.

## LEGAL STANDARD

Dismissal is proper under Rule 12(b)(1) when a court lacks subject-matter jurisdiction, either facially or factually. *See Bazile v. Fin. Sys. of Green Bay,* 983 F.3d 274, 279 (7th Cir. 2020). Although the Court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff," the burden is on the plaintiff to establish subject-matter jurisdiction. *Gookins v. County Materials,* No. 1:19-CV-867 RLM-MJD, 2020 U.S. Dist. LEXIS 172363, at *5 (S.D. Ind. Sept. 21, 2020) (quotation and citation omitted). Federal courts lack subject-matter jurisdiction over unconstitutional statutes because "a law repugnant to the constitution is void." *Marbury v. Madison,* 5 U.S. 137, 180 (1803); *United States v. Baucum,* 80 F.3d 539, 540-41 (D.C. Cir. 1996) (per curiam) ("[O]nce a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce.").

Furthermore, under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed where it fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a 12(b)(6) motion to dismiss, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

"Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient." *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1252 (M.D. Fla. 2012) (citing *Iqbal*, 556 U.S. at 678) (dismissing TCPA claims where complaint "lack[ed] sufficient factual allegations to draw the reasonable inference that the defendant is liable for the misconduct alleged" (citation omitted)).

"[N]aked assertions" that are devoid of further factual support are also insufficient to state a claim. *Id.* (citing *Iqbal*, 556 U.S. at 678). Further, the court "is not bound to accept as true a legal conclusion stated as a 'factual allegation' in the complaint." *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-cv-1459-Orl-36KRS, 2013 U.S. Dist. LEXIS 181732, at *13 (M.D. Fla. Dec. 31, 2013) (quoting *Iqbal*, 556 U.S. at 678) (dismissing TCPA claims).

## ARGUMENT

## I. The FAC Should Be Dismissed Because the TCPA Was and Remains Unconstitutional, and Thus Cannot Be Enforced against eHealth.

This Court should dismiss Plaintiff's FAC with prejudice for lack of subject-matter jurisdiction and for failure to state a claim because the TCPA is unconstitutional due to the breathtaking number of content-based exemptions contained in the statute that do not pass strict scrutiny.

### a. The TCPA Remains Facially Unconstitutional Even After *AAPC* Due to the Presence of Numerous Content-Specific Exemptions.

Before Plaintiff filed the instant action, the Supreme Court held that the TCPA violates the First Amendment because it discriminates based on the content of speech. *Barr v. Am. Ass'n of Political Consultants, Inc.,* 140 S. Ct. 2335, 2346 (2020) ("*AAPC"*). In

- 5 -

*AAPC,* the Supreme Court expressly found that the TCPA's "2015 government-debt exemption created an unconstitutional exception to the 1991 robocall restriction" and severed it in order to uphold the statute. 140 S. Ct. at 2348. *AAPC* clearly demonstrated that content-specific exemptions to the TCPA raise major constitutional infirmities and must be addressed. *See id.* at 2347. The TCPA still contains multiple content-based exemptions that were *not* raised or considered in *AAPC,* all of which—collectively and individually—demonstrate that TCPA restrictions are overly broad, violate the First Amendment, and cannot be severed to save the statute.

### b. The TCPA Remains Riddled with Content-Specific Exemptions.

The text of the TCPA, and the FCC's implementation of it, contain numerous content-based restrictions that were not severed (or addressed) in *AAPC*. These include: i) an exemption for emergency calls;[1] ii) an FCC-created exemption for "autodialed or prerecorded message calls by a wireless carrier to its customer when the customer is not charged;"[2] iii) an FCC-created exemption for certain healthcare-related calls;[3] iv) an FCC-created exemption for certain package-delivery notifications;[4] v) an FCC-created exemption for schools to communicate with students and parents;[5] and vi) an FCC-created exemption for certain messages by banks

---

[1] 47 U.S.C. § 277(b)(1)(A) (emergency calls).

[2] 77 Fed. Reg. 34233, 34236 (June 11, 2012).

[3] 47 C.F.R. § 64.1200(a)(3)(v).

[4] *In re Cargo Airline Ass'n*, 29 FCC Rcd 3432, 3437-3438 (2014).

[5] *In re Rules & Regs. Implementing [TCPA] of 1991*, CG Docket No. 02-278, FCC 16-88 (Aug. 4, 2016).

pertaining to fraud.[6] Additionally, the FCC has created a content-based distinction on calls by requiring a higher level of consent for calls made for a marketing purpose, rather than calls made for an informational purpose.[7] Like the government-backed debt exemption at issue in *AAPC*, each and every one of these exemptions renders the TCPA a content-specific restriction on speech. *AAPC*, 140 S. Ct. at 2347; *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015).

### c.  The Content-Based Exemptions Do Not Survive Strict Scrutiny.

To determine if a content-based restriction withstands strict scrutiny, the reviewing court "must identify with care the interests the State itself asserts" in maintaining the speech restriction, and may not "supplant the precise interests put forward by the State with other suppositions." *Edenfield v. Fane,* 507 U.S. 761, 768 (1993). The burden is on the party defending a restriction to advance evidence that the harms Congress identified are real. *Id.; Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530, 543 (1980) ("[m]ere speculation of harm" is insufficient). The Supreme Court recently conceded that "collecting government debt"—though a "worthy goal"—"cannot satisfy strict scrutiny." *AAPC,* 140 S. Ct. at 2347.

Similarly, none of the other content-based exemptions remaining in the TCPA can survive strict scrutiny. Even the "emergency purposes" exemption, which comes closest, is so ephemeral as to remain both an under- and over-inclusive restriction on speech. *See* 47 U.S.C. § 227(b)(1)(A)(iii). While many of the FCC's exemptions—*i.e.*,

---

[6] 30 FCC Rcd 7961, 8025 (2015).
[7] 30 FCC Rcd at 7968.

healthcare, package delivery, or fraud notification messages—look at "urgency" or the need for "time sensitive" communication, they can hardly be considered "narrowly tailored" to a "compelling" governmental interest. *See Reed*, 576 U.S. at 163.

### d.  The TCPA's Additional Content-Based Exemptions Should Not—and Cannot—Be Severed to Save the Statute as Applied to eHealth.

While *AAPC* certainly forecloses any argument that the TCPA is unconstitutionally applied due to the single content-based exemption addressed in that case, nothing in the *AAPC* ruling mandates that a statute containing *numerous* content-based exemptions should always survive constitutional scrutiny. Here, for instance, in order to save the statute, the Court would have to sever *seven* separate exemptions—rendering those exemptions constitutionally infirm and unenforceable.[8] The Supreme Court was willing to sever the *single* exemption in *AAPC* in recognition that Congress likely intended that result, since the government-backed debt exemption was a bolt-on provision added late in the statute's life. *See AAPC*, 140 S. Ct. at 2356. But many of the TCPA's other content-specific exemptions have existed for much longer and have persisted through multiple amendments to the statute.[9] There is no basis, therefore, to conclude that Congress would prefer to uphold the statute if the TCPA's provisions were applied with complete uniformity to marketers and debt collectors on the one

---

[8] *See supra* nn. 1-7 and accompanying text.

[9] The TCPA was amended in 2003 and again in 2015. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991 et al.*, CG Docket No. 02-278, FCC 03-153 (July 3, 2003); Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584; *see, e.g.*, 77 Fed. Reg. at 34235.

hand and schools, hospitals, delivery companies, and banks delivering fraud notifications on the other.

Moreover, there remains significant doubt that this Court could sever certain TCPA exemptions even if it wanted to, as the Hobbs Act appears to deprive courts of jurisdiction to sever FCC exemptions.[10] If the exemptions cannot be severed, the statute is unconstitutional due to its numerous content-based restrictions that do not survive strict scrutiny, and cannot be saved.

Finally, and most basically, *AAPC*'s recognition that the First Amendment is "a kind of Equal Protection Clause for ideas" is at tension with basic concepts of free speech and due process. *See AAPC*, 140 S. Ct. at 2354 (citation omitted). The First Amendment does not assure *equal* speech: it assures *free* speech. And while eHealth does not dispute *AAPC's* holding that severance is an appropriate remedy in some cases—such as to assure that certain favored speakers are brought back within the restrictions that apply to everybody else where, as here, so much speech is being exempted on a content-specific basis—it demonstrates *that the restriction on speech itself was overly broad to begin with* and a different remedy ought to apply.

---

[10] Although the application of the Hobbs Act as a bar to judicial review of agency action was in some doubt following the Supreme Court's ruling in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2054-56 (2019), this and other courts have noted that litigators "cannot place much reliance on the opinion, because all it did was remand the case to the lower courts in order to address two 'preliminary issues,'" and "the Seventh Circuit instructs that district courts must presume the agency actions are 'valid.'" *Ind. Rail Rd. Co. v. Ill. Commerce Comm'n*, 491 F. Supp. 3d 344, 349-50 (N.D. Ill. 2020) (quoting *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449 (7th Cir. 2010)).

010-9276-8747/1/AMERICAS

As such, eHealth submits that the proper analytic course is to scrutinize the great breadth of the TCPA's restriction on use of an ATDS or prerecorded voice itself—and not any particular exemption in isolation—to determine whether the statute can be constitutionally applied. As noted above, however, a content-specific statute must be "narrowly tailored" to a "compelling governmental interest" in order to survive. *See Reed*, 576 U.S. at 171. Here, as demonstrated by its numerous carve-outs, the TCPA is not narrowly tailored, but is fashioned extremely broadly to cover both *wanted* and *unwanted* calls alike.[11] These carve-outs do not further the underlying purpose of the statute—to protect consumer privacy—but rather reflect that certain calls regulated by the statute *did not infringe upon that interest to begin with*.

In sum, therefore, the TCPA is overly broad as crafted and applied—which has resulted in the need for innumerable content-based restrictions necessary to trim it down to size. But since the TCPA was always a poor fit for the harm it was trying to prevent, there is no reason to conclude that Congress would want to see the statute broadly applied with all of the FCC's exemptions removed. Yet *AAPC* squarely compels a determination by this court that the TCPA's numerous content-based exemptions must be struck down unless they survive strict scrutiny, which they do not. That leaves only the question of the remedy.

Under *AAPC*, therefore, eHealth is entitled to one of two remedies: i) either all of the TCPA's content-based restrictions must be struck down and the statute must be

---

[11] While the statute affords a defense for "consented" calls, *see* 47 U.S.C. § 227(b)(1)(A), not all uninvited calls are unwanted, or vice versa.

- 10 -

expanded to apply uniformly to all speech made using an ATDS or prerecorded voice; or ii) the TCPA's entire prerecorded voice restriction must be struck down as an overly broad restriction on speech, inconsistent with the First Amendment. In the absence of any evidence that Congress would want the restrictions of the TCPA to apply so broadly—and given the Court's likely lack of jurisdiction to sever FCC exemptions under the Hobbs Act, *see Ind. R.R.. Co.*, 491 F. Supp. 3d at 349-50—eHealth submits that the second course is the most prudent and appropriate.

## II.   The FAC Fails to State a DNC Claim.

Even if the Court declines to dismiss the FAC based on the TCPA's unconstitutionality, the FAC is subject to dismissal because it fails to allege that Plaintiff uses the number at issue for residential purposes. "To prevail under 47 C.F.R. § 64.1200(c)(2), the plaintiff must establish that his cellular number is used for residential purposes." *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017) (citation omitted). Where (as here) a plaintiff fails to plead facts sufficient for a court to conclude that the cell phone was used for residential purposes, dismissal is appropriate. *See*, *e.g.*, *id.* (dismissing TCPA claim where plaintiff "pled no facts sufficient for this Court to draw th[e] conclusion" that the plaintiff's cell phone was used for residential purposes).

Here, Plaintiff characterizes his number as his "cell phone number." *See* FAC ¶ 17, 20; *see also id.* ¶ 21 ("Plaintiff's number is for personal use"). The FAC does not contain even a single allegation that the phone number at issue is used for residential purposes. This is sufficient to merit dismissal of Plaintiff's claim. *See, e.g., Cunningham*

- 11 -

*v. Caribbean Cruise Lines, Inc.*, No. 15-62580-CIV-MORENO, 2016 U.S. Dist. LEXIS 179758, at *4-6 (S.D. Fla. Dec. 28, 2016) (granting motion to dismiss where plaintiff "concede[d] that all telephone calls at issue were made to his cellular telephone number").

## CONCLUSION

For the foregoing reasons, Defendant eHealth respectfully requests that this Court dismiss Plaintiff's First Amended Complaint in its entirety.

## <u>Local Rule 3.01(g) Certification</u>

Counsel for Defendant certifies that it attempted to confer with counsel for Plaintiff regarding the relief sought in this motion.  However, counsel for Plaintiff would neither confirm nor deny whether he opposes the relief requested prior to filing. As such, counsel for Defendant will diligently try for the next three days to confer with counsel for Plaintiff regarding the relief sought in this motion pursuant to Local Rule 3.01(g)(3).


Dated:  October 19, 2021          */s/ Jason D. Joffe*
                                  Jason D. Joffe
                                  Florida Bar Number 0013564
                                  Email: jason.joffe@squirepb.com
                                  SQUIRE PATTON BOGGS (US) LLP
                                  200 S. Biscayne Blvd., Suite 4700
                                  Miami, FL 33131
                                  Telephone: (305) 577-7000
                                  Facsimile: (305) 577-7001

                                  */s/ Sara J. Triplett*
                                  Sara J. Triplett
                                  Florida Bar Number 99202
                                  Email: sara.triplett@squirepb.com
                                  SQUIRE PATTON BOGGS (US) LLP
                                  555 South Flower Street, 31st Floor
                                  Los Angeles, California 90071
                                  Telephone: (213) 689-6590
                                  Facsimile: (213) 623-4581

                                  ***Attorneys for Defendant eHealthInsurance Services, Inc.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 19, 2021, I electronically filed with the Clerk of Court the foregoing document using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

> /s/ *Jason Daniel Joffe*
> Jason Daniel Joffe